**IN THE DISTRICT COURT OF GUAM**

| | | |
|---|---|---|
| GUAM FEDERATION OF TEACHERS, | ) | CIVIL CASE NO. 15-00003 |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| LISA BAZA CRUZ, GAYLE HENDRICKS, MICHELLE SANTOS, and ELIZABETH ICHIHARA-ROSARIO, in their official capacities as Commissioners of the Guam Commission for Educator Certification, | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

The Guam Federation of Teachers ("GFT") challenges the constitutionality of the newly enacted Guam Rules Governing the Standards of Professional Conduct for Guam Educators ("Guam Rules"), P.L. 32-236 (2015). Under the Guam Rules, teachers may lose their teaching certificates – be "decertified" – for a broad range of "immoral conduct." In the Amended Complaint (ECF No. 8), GFT asserts that the new rules violate their members' First Amendment right of free speech (Count 1) and the Fourteenth Amendment and Guam Organic Act's guarantees of due-process rights (Count 3), as well as the Organic Act's mandate that teacher discipline be effected through a civil service merit system (Count 2). GFT seeks a declaration that the Guam Rules are unlawful and an injunction of their enforcement (Count 4). Defendants are commissioners of the Guam Commission for Educator Certification (collectively "the Commissioners").

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Declaratory and Injunctive Relief (ECF No. 11), on grounds that the Court lacks subject matter

1

jurisdiction and that the GTF has failed to state a claim, under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The motion is supported by a declaration of Lea Santos (ECF No. 14). Plaintiff Guam Federation of Teachers ("GFT") has filed an opposition (ECF No. 16), accompanied by an affidavit of Timothy Fedenko (ECF No. 17), and Defendants have filed a reply (ECF No. 20). The Court has considered all the papers and finds the motion appropriate for disposition without a hearing. For the reasons stated herein, the motion will be GRANTED without prejudice and with leave to amend.

## II.  LEGAL STANDARD

A challenge to Article III standing is properly raised in a motion for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). Such challenges can be either facial or factual. *Id*. A facial challenge asserts that the allegations in the complaint, even if true, "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, in a factual challenge the movant relies on extrinsic evidence to show that subject matter jurisdiction is lacking. *Id*. The court may consider evidence beyond the complaint to resolve a factual challenge without converting the motion to dismiss to a motion for summary judgment. *Id*. Once the movant has submitted affidavits or other extrinsic evidence to support a factual attack, the opposing party may furnish such evidence to meet its burden of establishing subject matter jurisdiction. *Savage v. Glendale Union High School, Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). If the factual issues also go to the merits of the claims, the court should apply the same standard as in summary judgment motion and dismiss only if no material facts are in dispute and the movant "is entitled to prevail as a matter of law." *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983).

Standing is a "necessary component" of subject matter jurisdiction under Article III of the Constitution. *In re Palmdale Hills Prop., LLC,* 654 F.3d 868, 873 (9th Cir. 2011). To have Article III standing, a plaintiff must have suffered an "injury in fact" that is fairly traceable to the defendant's conduct and can be remedied by a favorable court decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). Where an injury in fact has not yet occurred, plaintiffs must show that they face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 1999) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. On a Rule 12(b)(6) motion, all well-pleaded factual allegations are taken as true. *Hebbe v. Pliler,* 627 F.3d 338, 341–42 (9th Cir. 2010). Although a complaint does not need "detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Legal conclusions couched as factual allegations do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The claim to relief must contain sufficient well-pleaded facts to be "plausible on its face." *Twombly,* 550 U.S. at 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The purpose of this standard is "to give fair notice and to enable the

opposing party to defend itself effectively[,]" and to ensure "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Bacca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

### III. DISCUSSION

A. <u>Does GFT Lack Standing to Sue on Counts 2 and 3?</u>

1. *Arguments of the Parties*

The Commissioners assert that GFT lacks standing to bring the merit-system and due-process claims because none of its members have suffered an actual injury in fact or are in imminent danger of suffering such an injury. (MTD, pp 14–17.) In support, they have submitted an affidavit of Lea Santos, the Commission's executive director and an authorized custodian of record for the Commission, in which she states that no GovGuam educators have been decertified by the Commission and that "[t]here are no ongoing or pending disciplinary proceedings before the Commission." (Santos Decl., p. 2.) The Commissioners cite to a 2011 Guam Supreme Court decision finding that "[t]he *possibility* of an ethics prosecution [by the bar association against attorney], unsubstantiated by any proof and/or by any actual ethics prosecution, is an 'injury' which is too 'hypothetical' or conjectural' to convey standing" to the plaintiff. *People v. Tennessen,* 2011 Guam 2 ¶ 22 (original emphasis).

In opposition, GFT asserts that it has standing because its members have "reasonable concerns over the chilling effect PL 32-236 has on their speech and conduct." (Opp'n 4.) In *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* an environmental organization had standing to sue a company that discharged pollutants into a river; affidavits showed that members had "reasonable concerns about the effects of those discharges" which "directly affected those affiants' recreational, aesthetic, and economic interests." 528 U.S. 167, 183–84 (2000). Timothy

4

Fedenko, a school librarian and GFT's president, has sworn out an affidavit stating that he is "concerned with the impact the public law has on my ability to select books for our library, because some selections might generate a complaint and trigger the decertification process of PL 32-236." (Fedenko Affidavit ¶ 4.) Fedenko further asserts that GFT's teacher members worry about the new Guam Rules' impact on their ability "to exercise their free speech rights on social media" (¶ 5), "to be open and public about their romantic relationships with members of the same sex" (¶ 6), and on "conduct in their private lives" that may become public and expose them to discipline under the Rules (¶ 7).

2.  *Analysis*

GFT lacks standing to bring due-process and merits-system challenges to the Guam Rules because it has not shown an injury in fact. It is undisputed that no disciplinary process under the Guam Rules is pending or has taken place, and no GFT member has been decertified pursuant to the Guam Rules. Thus, there is no "actual" injury owing to a process unlawful under the Constitution or the Organic Act. GFT does not claim that the Commissioners have threatened action under the Guam Rules against any member because of any particular conduct. The injury asserted by GFT is purely to its members' First Amendment rights, in that teachers' protected speech and conduct have been chilled by P.L. 32-236. GFT comes close to admitting as much: "Plaintiffs seek relief not merely from a *potential* future investigation by the Commission, but from the *real and immediate* effect PL 32-236 is having on their speech and conduct." Opp'n 5 (original emphasis).

*Friends of the Earth* does not help GFT. In that case, the injury to the association's members from pollutants that had been emitted by the defendant was not hypothetical, but concrete and real. Members' testimony and affidavits established that they actually had to stop

5

walking by the river and fishing in it because it had become contaminated. *Friends of the Earth,* 528 U.S. at 181–82.

In its Opposition, GFT confuses the standing analysis of the procedural claims (counts 2 and 3) with that of its First Amendment claim (count 1). The fact that "the genesis of the Plaintiff's case [is] in the First Amendment" (Opp'n, p. 4) doesn't mean that First Amendment standing is sufficient to confer standing on all claims. Standing must be proven with respect to each claim, according to whether "the constitutional or statutory provision on which the claim rests can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500 (1975). First Amendment challenges have a lower threshold for establishing standing than other claims do. *Lopez v. Candaele,* 630 F.3d 775, 781 (9th Cir. 2000). However, a plaintiff cannot bootstrap a procedural due process claim onto a First Amendment claim. *Ass'n of Nat'l Advertisers, Inc. v. FTC,* 565 F.2d 237, 239 (2nd Cir. 1977).

No Federation member is currently facing a disciplinary proceeding under P.L. 32-236, and no such action has been threatened by the Commission. Until such a proceeding commences or is imminent, no GFT members are being deprived of their rights to an adverse-action procedure under the merit system or threatened with the loss of their property rights in their teaching certification. For these reasons, GFT lacks Article III standing to bring Counts 2 and 3.

B. <u>Can GFT Maintain a Claim in Count 1 that P.L. 32-236 Facially Violates the First Amendment?</u>

1. *Arguments of the Parties*

In Count 1, GFT claims that P.L. 32-236 is facially vague and overbroad in that it chills a substantial amount of protected speech, in violation of the First Amendment. (FAC ¶¶ 68–69.) The new Guam Rules prohibit a broad range of "unethical conduct" and would allow the Commission to suspend or revoke a teacher's certification for "gross immorality" (Rules §

6

6.01.4), "any behavior or conduct detrimental to the health, welfare, discipline, and morals of students" (Rules § 4.09.1), or "conduct done knowingly contrary to justice, honesty or good morals" (Rules § 3.13.2). GFT asserts that such legal conduct as having a baby out of wedlock, public intoxication or smoking, practicing nonviolent civil disobedience, and applying to marry a person of the same sex would violate the Rules. (FAC ¶¶ 52–58.)

The Commissioners deny that P.L. 32-236 is facially vague and overbroad. (MTD, pp. 17–24.) As to overbreadth, they maintain that the doomsday scenarios GFT has described are hypothetical and merely speculative, and that there is no realistic danger that the Commission would proceed against a teacher for such conduct. (MTD, pp. 18–19.) They assert that much of the conduct (e.g., public smoking) is not speech and therefore not constitutionally protected. As to vagueness, they point out that that Rules define the allegedly vague terms (e.g., "intemperance," § 3.11, and "immoral conduct," § 3.09), and specify the acts that constitute unethical conduct (§§ 4.01–4.10). They assert that courts have been justifiably leery of facial challenges where the chilling effect of broad statutory language, if any, is very small in relation to the statute's legitimate aim to regulate professions. (MTD, pp. 23–24.)

    2. *Analysis*

Before deciding the substantive issue, the Court must satisfy itself that GFT has standing to bring a facial challenge to P.L. 32-236.[1] A facial challenge to a law on First Amendment free-speech grounds "is proper only if the statute by its terms seeks to regulate spoken words or patently expressive or communicative conduct, such as picketing or handbilling, or if the statute

---

[1] It is undisputed that GFT has "associational standing" to sue on behalf of its members. *See Friends of the Earth,* 528 U.S. at 181 ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

7

significantly restricts opportunities for expression." *S. Or. Barter Fair v. Jackson Cnty., Or.,* 372 F.3d 1128, 1135 (9th Cir. 2004). A plaintiff may establish standing to bring a pre-enforcement First Amendment challenge to a statute by demonstrating "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979), or "an actual and well-founded fear that the law will be enforced against them," *Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 393 (1988). The test to show a "realistic danger" is whether (1) plaintiff has alleged a concrete intent to engage in constitutionally protected conduct, (2) the conduct is proscribed by statute, and (3) there is a credible threat of prosecution. *Lopez,* 630 F.3d at 785 (citing *Babbitt*). The threat of adverse action must be "specific and credible." *Id.* at 781. The "mere existence of a statute" is not enough to create an injury; the threat of "imminent prosecution" must be "genuine[.]" *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 1999) (finding no standing for landlords to challenge housing laws prohibiting discrimination on basis of marital status, where no complaint had been filed against them and no investigation had been initiated). A court evaluating the genuineness of a claimed threat "look[s] to whether the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id.* (internal quotations marks and citation omitted).

GFT has not articulated a concrete plan of its membership to engage in protected speech or conduct that violates the Guam Rules. This becomes apparent when each threat alleged in the complaint and the Fedenko affidavit is examined.

//

- "Having a baby out of wedlock violates the statute (§3.13.2)." (Compl. ¶ 52.) The Guam Rules allow the suspension or revocation of a teacher's certification for "unethical conduct," including the commission of "any crime involving moral turpitude[.]" (Rules § 4.01.) Moral turpitude includes "[c]onduct done knowingly contrary to justice, honesty or good morals and endangers the health, welfare, safety or education of any student." (Rules § 3.13.2.) It seems fair to assume that, intentionally or no, some unmarried teacher is likely to have a baby in the near future. It is pure speculation, however, that the Commission might consider this condition to be contrary to good morals and a danger to students' education and welfare. GFT has not alleged that the Commissioners have made any statements to that effect or threatened action against such a teacher. Moreover, even if the Commission were to regard having a baby out of wedlock to be immoral behavior, GFT has not alleged that it is a *crime.* There is no basis to believe that under the Guam Rules a teacher could be decertified for becoming a single mother.

Even if there were such a basis, how is having a baby out of wedlock expressive conduct? For conduct to come under free-speech protection, the person engaging in it must intend it to communicate a message, and it must, in context, "reasonably be understood by the viewer to be communicative." *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 294 (1984) (assuming without deciding that overnight sleeping in park, in connection with demonstration on plight of homeless persons, is expressive conduct). It is hard to imagine a mother having a baby out of wedlock in order to "send a message," or the context in which others might reasonably view this as doing so. Regulating the private conduct of having a baby out of wedlock may

9

Case 1:15-cv-00003   Document 24   Filed 04/07/16   Page 9 of 15

violate the Fourteenth Amendment's substantive due-process rights, but that is not how the complaint has been pled: the due-process claim in Count 3 is as to teachers' *property* right in their teaching certificate.

- "Engaging in social activities that include intoxication by some of the participants, violates the statute (§ 4.09.1)." (Compl. ¶ 53.) Unethical conduct includes "[a]ny behavior or conduct detrimental to the health, welfare, discipline, or morals of students[.]" (Rules § 4.09.1.) Getting drunk at parties is hardly expressive activity protected by the First Amendment. *See Suber v. Guinta,* 902 F. Supp. 2d 591, 605 (E.D. Pa. 2012). Again, other constitutionally protected rights may be affected, but GFT has not pled them.

- "Smoking in public violates this statute (§4.09.1)." (Compl. ¶ 54.) Plaintiffs have not alleged a context in which a teacher would smoke in public to make a statement. Without context, it is not expressive conduct.

- "Smoking in a private home in front of students violates this statute (§4.09.1)." (Compl. ¶ 55.) Still, there is not enough context to generate an intention to communicate a message.

- "Supporting or practicing non-violent civil disobedience violates this statute (§4.09.1)." As the Commissioners acknowledge in their motion (p. 20), there is at least a possibility of protected speech when one expresses support for civil disobedience. *White v. Lee,* 227 F.3d 1214, 1228 (9th Cir. 2000) ("Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment."). However, § 4.09.1 of the Guam Rules does not say that supporting

10

(or even practicing) non-violent civil disobedience would constitute detrimental conduct. The threat is not specific and credible. No teacher has announced plans to advocate civil disobedience and been warned by the Commission that such activity would be actionable under the Rules.

- "A gay teacher seeking a marriage license in Guam violates this statute (§§ 4.09.1 & 6.01.4)." (Compl. ¶ 57.) Rules § 6.01.4 makes a teacher subject to discipline if he or she "[h]as been guilty of gross immorality or an act involving moral turpitude." The Guam Rules do not expressly condemn same-sex relationships or marriage. The Supreme Court has determined that same-sex couples have a constitutional right to marry, *Obergefell v. Hodges,* __ U.S. __, 135 S.Ct. 2584 (2015). It may be presumed that state officials will enforce this provision, which on its face does not target same-sex couples, in a manner consistent with the Constitution as announced by the Supreme Court.

- "Keeping a child's non-emergency confidential information from a parent at the request of the child violates this statute (§3.13.2)." (Compl. ¶ 58.) This allegation fails to establish standing for the same reasons that the allegation the Rules target unwed mothers fails. It is not expressive conduct, not defined as morally turpitudinous, and not alleged to be a crime.

The material in Timothy Fedenko's affidavit, submitted by GFT together with the opposition brief, does not change the outcome. Fedenko, a school librarian serving as GFT's president, asserts that some GFT members "are worried over the impact PL 32-236 has on their ability to be open and public about their romantic relationships with members of the opposite

11

sex." (Fedenko Affidavit ¶ 6.) This worry is much broader than the concern over same-sex *marriage* raised in the Amended Complaint. But even if we take it at face value, on what concrete basis are teachers worried that the Commissioners will construe same-sex relationships as unethical conduct and try to use the Guam Rules to decertify openly gay teachers? The Amended Complaint and the affidavit do not say. Fedenko's other "worries"—that members are concerned about the impact of P.L. 32-236 on "their ability to exercise their free speech rights on social media" (¶ 5) and "any conduct in their private lives that, if published through speech, might be considered unprofessional"—are inchoate and purely speculative.

Fedenko attests to only one impact that the new Guam Rules might have on him personally: "my ability to select books for our library, because some of the selections might generate a complaint and trigger the decertification process of PL 32-236" (¶ 4). This concern is nowhere in the Amended Complaint, and thus it is not properly before the Court on a motion to dismiss. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) ("Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."). Even so, it demonstrates a common defect of GFT's pleading, which alleges only a generalized chilling of speech and then offers up each educator's personal nightmare enforcement scenario, without any facts that show a realistic danger of it occurring. Assuming for the sake of argument that a school librarian's book selections may be expressive conduct, what books was Fedenko planning to buy for his library which he now, after the enactment of P.L. 32-236, has decided to forego? Why did he think purchasing those books might subject him to discipline? The Court has no facts from which to determine whether the threat Fedenko feels the Guam Rules pose to his decision making is a credible one.

//

The threats that GFT's members feel from P.L. 32-236 to their ability to conduct their lives freely are merely speculative and hypothetical. Except for speech in support of civil disobedience, GFT has not pleaded an intent to engage in expressive conduct that is protected by the First Amendment. GFT has made no showing, taking all well-pled facts as true, that the new law prohibits the conduct in which they wish to engage and that the Commission would use the law to suspend or revoke an educator's certification. For these reasons, it lacks standing to bring a pre-enforcement First Amendment action and Count 1 must be dismissed.

This conclusion in no way denies the legitimacy of the teachers' concerns. The law reporters are littered with cases where school boards fired teachers for "immoral" conduct that supposedly set a bad example for students. *See* Davison et al., *The Personal Lives and Professional Responsibilities of P–12 Educators: Off-Duty Conduct as Grounds for Adverse Employment Actions,* 171 Ed. Law Rep. 691 (2003). Common grounds for discipline have included sexual misconduct, same-sex orientation, pregnancy out of wedlock, and alcohol and drug abuse. *See, e.g., Fisher v. Snyder,* 476 F.2d 375 (8th Cir. 1973) (divorced female teacher allowed single men to stay in her apartment); *Erb v. Iowa State Bd. of Public Instruction,* 216 N.W.2d 339 (Iowa 1974) (adultery); *Bertolini v. Whitehall City School Dist. Bd. of Educ.,* 139 Ohio App. 3d 595 (2000) (superintendent hired a woman with whom he was having an adulterous affair); *Glover v. Williamsburg Local School Dist. Bd. of Educ.,* 20 F. Supp. 2d 1160 (S.D. Ohio 1998) (sexual orientation); *Avery v. Homewood City Bd. of Educ.,* 674 F.2d 337 (5th Cir. 1982) (pregnancy out of wedlock); *Bd. of Educ. of Hopkins Cnty. v. Wood,* 717 S.W.2d 837 (Ky. 1986) (smoking marijuana off campus with two students); *In re Termination of Kibbe,* 128 N.M. 629 (2000) (misdemeanor DUI).

These cases, though, point up two problems with GFT's Amended Complaint. First, it alleges injury to educators' free speech rights, where the real harm is to privacy rights most commonly analyzed under substantive due process. This may be a tactical move on GFT's part. The jurisdictional threshold for facial challenges to speech restrictions is lower than for facial challenges to other laws. The Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno,* 481 U.S. 739, 745 (1987) (citing *Schall v. Martin,* 467 U.S. 253, 268 n.18 (1984)). To prevail on a facial challenge outside the First Amendment context, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* The law must be "unconstitutional in all its applications." *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 (2008). In contrast, a law that restricts protected speech is subject to strict scrutiny, and the burden is on the state to show that the law is narrowly tailored to serve a compelling state interest. *Id.* at 451. Even in First Amendment cases, though, facial challenges are disfavored, because they rest on speculation, run counter to the principle of judicial restraint, and presume, contrary to the democratic process, that the state will not implement the law in a manner consistent with the Constitution. *Id.* at 450–51.

Second, similar laws in other states broadly regulating teachers' conduct inside and outside the classroom have not been invalidated on facial challenges. Laws regulating teachers' behavior do not have to "expressly prohibit every imaginable inappropriate conduct by teachers" in order to pass constitutional muster. *Ward v. Hickey,* 996 F.2d 448, 454 (1st Cir. 1993).

//

//

//

## IV. CONCLUSION

GFT lacks Article III standing to bring any of the three substantive claims in the Amended Complaint. Count 4 is a claim for injunctive relief stemming from the first three claims, and cannot be maintained independently once the underlying claims have been dismissed.

Because the Amended Complaint must be dismissed on standing grounds, the Court does not address Defendants' additional arguments: that P.L. 32-236 is compatible with Guam's merit system; that a facial due-process challenge to P.L. 32-236 must fail; and that GFT has sued the wrong party. (MTD, pp. 24–29.)

WHEREFORE, Plaintiff GFT's Amended Complaint is DISMISSED without prejudice, with leave to amend no later than 30 days after the issuance of this Decision and Order. Defendants' Request for Oral Argument (ECF No. 13) is DENIED.

SO ORDERED this 7th day of April 2016.

/s/ Ramona V. Manglona

RAMONA V. MANGLONA
Chief Judge, District of the Northern Mariana Islands, sitting by designation